## EDWARD POND *v.* J. E. POND.

There is no relation of inferiority in the constitution or powers of the Probate Court as respects the District Court. They are unlike; but, within their respective spheres, equal. They are both Constitutional Courts. No appeal lies from one to the other.

Issues of fact are sent from the Probate Court to the District Court, not as from an inferior to a superior tribunal, but for the sake of convenience, because the Probate Court has not the machinery of jury trial and its incidents. But it was never intended to transfer any portion of the jurisdiction of Probate Courts to the District Courts. Nor was it designed, by the act of 1855, directing these issues, to make the judgments of the District Courts binding upon the Courts of Probate.

The Probate Court does not lose its jurisdiction over a subject of which it has taken cognizance by adopting the proceeding of an issue whereby to determine the issue advisedly; the finding of a jury in the District Court is merely in aid of its jurisdiction, by settling the facts, and thus furnishing the material upon which it is to act, and after such findings, the functions of the District Court cease.

The District Court, by virtue of its common law powers alone, derives its power to try issues of fact, and that Court, as a Court of Law, has no jurisdiction over probate matters. Its jurisdiction over matters of account and the like, is derived from its grant of equitable power in the Constitution, and in that respect it has only concurrent jurisdiction with the Probate Court.

Therefore, where an administrator filed in the Probate Court his account for final settlement, and an issue of fact was made thereon, which was certified to the District Court for trial, and trial was had, the jury finding on each issue, and the Judge rendering his decision on such findings; and this was certified back to the Probate Court, which Court refused to give effect to the decision and judgment of the District Court, but gave judgment on such findings as it construed them : *Held,* that there was no error in the judgment of the Probate Court.

APPEAL from the Probate Court of the County of Placer.

A statement of the facts appears in the opinion of the Court.

*Anderson and Myers* for Appellant.

We contend that the judgment of the Probate Court is erroneous, and that that Court should have rendered its judgment according to the finding and decision of the District Court.

The words of the statute are, in this respect, imperative : " The Probate Court shall render judgment according to the

finding and decision in the District Court." Wood's Digest, 421, § 296.

The Probate Court is a Court of special and limited jurisdiction. Clark *v.* Perry, 5 Cal., 58. It has no power to review the finding and decision of the District Court. It can not reject or set aside such finding and decision, for no such power is conferred upon it, either by statute or the Constitution. This is the legitimate province of the Supreme Court, and no other.

If the administrator considered himself aggrieved by the finding and decision of the District Court, he should have filed in that Court his written objection, or else have applied there for a new trial. A bill of exceptions or statement could have been settled, and the same would then have become part of the record in the Probate Court, and, consequently, the proceedings in the District Court, including its findings and decision, could have been properly presented to this Court, on appeal from the judgment of the Probate Court. Special provision is made by the statute for the taking and settlement of objections and exceptions to the decisions of the District Court in these cases. Wood's Digest, 421, § 296.

As the case now stands, the contestant having been, of course, satisfied with the finding and decision of the District Court, and the administrator having made no objections, or application for a new trial in that Court, it so occurs that there is no bill of exceptions or statement of the case in the District Court, and the time for settling one has passed.

Now, without a statement or bill of exceptions, we maintain that this Court can not review the finding and decision of the District Court, but must necessarily reverse the judgment of the Probate Court, and order that Court to enter up judgment according to the finding and decision in the District Court; for, should this Court affirm the judgment of the Probate Court, it would have to do so by reason of errors occurring in the District Court, which were never raised in that Court, and at the same time leave this contestant without remedy, in having the proceedings properly conducted in the District Court; for it will be observed that it is now too late to effect any such purpose, and that the fault is not the fault of the contestant.

Had the administrator objected to the finding and decision of the District Court, or any part of it, then the error in that Court, if any, could easily have been corrected there; at least the case would have been in a condition where the respective rights of the parties could have been enforced.

The section of the statute above cited, provides for the trial of those issues like any other issue of fact in the District Court, and that, at the trial, like objection and exception to the decisions of the District Court may be taken and settled; but no such objections or exceptions were taken in that Court, and we ap-

prehend that the party can not now be sustained in objection or exception not urged in the Court where the alleged error occurred.

We maintain such finding and decision of the District Court is not reviewable at all by the Probate Court, either with or without a statement or bill of exceptions, and also that the same is not reviewable in this Court without such statement or bill of exceptions.

No part of the evidence in the District Court appears in this record. Such evidence may have been conflicting, for aught that this Court can know, and if that fact appeared, this Court would not review the facts of the case, or the decision of the District Court, based upon the findings of facts. Griswold v. Sharpe, 2 Cal. R., 17.

It will be presumed that the District Court decided correctly, in the absence of a statement, or bill of exceptions. Gates v. Buckingham, 4 Cal. R., 286.

On appeal, every intendment must be in favor of the decision of the Court below. Johnson v. Sepulbeda, 5 Cal. R., 149.

Where there is no bill of exceptions, or statement, there is nothing to impeach the regularity of the judgment, and it will be affirmed. Egery v. Buchanan, 5 Cal. R., 53. Here there is nothing to impeach the regularity of the decision of the District Court, but we have a statement, showing the irregularity of the judgment in the Probate Court.

Suppose the Probate Court had rendered its judgment in accordance with the finding and decision of the District Court, how then, we inquire, could this Court have attacked the finding and decision of the District Court? This Court will not even review a judgment entered on the report of a referee, if no objection was made to the report in the Court below. Porter v. Borling, 2 Cal. R., 72.

In analogy to the rule of decision adopted in the case of the Steamer McKim v. Redfern, 5 Cal. Reports—an opposition to the report of a referee—the rule of decision, in cases of this character, should require the party opposing the finding and decision of the District Court to file his written objection thereto in that Court, or else apply for a new trial there; and this course should always be pursued, to enable that Court to correct any errors occuring before it.

Upon the hypothesis that there is no difference between this proceeding, under our statute, and that of trying issues out of chancery, then why is the decision of the District Court required? and why is anything more required of that Court than to find the facts?

Upon the verdict certified from the Common Law Court to the Court of Chancery, the latter, and not the former Court, rendered the decision. Here the statute has made this change, that

32

the District Court, and not the Probate Court, renders the decision. The decision is made by the same Court in which the facts are found, and not as under the old rule, by the Court from which the issues are sent. By the finding, is evidently meant the finding of facts, and by the decision, the conclusions of law; and under this proceeding both are made by the District Court.

The District Court is a Court of Equity, as well as a Court of Law, and in equity cases possesses all the powers of a Court of Chancery, and in its finding and decision in cases of this description, all those powers may be invoked, for it is not limited to its law or chancery side.

Again, in the issues out of chancery, the Chancellor was not bound by the verdict of the jury. He might regard it in aid of his conscience, but here the decision or conclusions of law being given to the District Court by the statute, they are, by the same statute, necessarily taken away from the Probate Court. The one precludes the other, for it can not reasonably be said that the District Court shall render its decision, and then that, notwithstanding this, the Probate Court is not bound by it, but may inspect it in aid of its conscience, and render its own decision. This would make the decision of the District Court a perfectly useless affair, wherefore we are the more strongly inclined to the opinion that the decision of the District Court, in such cases, is obligatory upon the Probate Court.

*Hillyer* for Respondent.

We maintain these propositions :

1. The Probate Court had sole and exclusive jurisdiction of the settlement of the account.

2. The action of the District Court in this proceeding, was merely auxiliary to that of the Probate Court, and rightfully extended no further than to decide upon the special issues submitted.

3. The Probate Court had exclusive jurisdiction as to the question of costs.

The first two propositions have been already decided by this Court. Reed *v.* McCormick, 4 Cal., 342 ; Keller *v.* Franklin, 5 Cal., 432 ; see, also, Barbour's Chan. Prac., 455–61.

The statute itself makes it clear. Nothing is to be certified to the District Court, except issues of fact. It only has before it certain disputed points, and not the whole case. Its finding and decisions are, of course, confined to these points.

When the District Court had given a distinct answer on each of the issues submitted to it, its duty was fully performed.

The whole design of the constitutional and legislative provisions was to allow the Probate Court the assistance of the District Court on issues of fact, for the reason that the District Court has the machinery of a jury, which the Probate Court lacks.

4. The appellant contends that where the issues were certified

to the District Court, that Court, by virtue of its general chancery jurisdiction, had full control of the settlement, and could make a final decree, which the Probate Court could not review, but simply record.

Granting this proposition, then, this being a chancery proceeding, the whole record is before this Court for review, and this Court will render such judgment as the whole proceedings set forth in the transcript should render proper.

This Court will determine the question whether, upon the verdict of the jury, and the findings of fact by the District Court, that Court rendered a correct decision. Grayson v. Guild, 4 Cal., 122.

BALDWIN, J., delivered the opinion of the Court—TERRY, C. J., and FIELD, J., concurring.

This appeal is from an order of the Probate Court discharging an administrator, and allowing his account.

The proceedings out of which this appeal grows, seem to be singularly irregular. It will be necessary to give a brief history of them, in order to an understanding of our decision.

In 1856, respondent was appointed administrator of one Hiram Pond, deceased, who died intestate in the year 1854. On the 23d of September, 1856, the administrator filed in the Probate Court his account for final settlement, and Edward Pond, the father and heir of the deceased, contested the account, and filed written exceptions. The account set forth that no property of the estate had come into the administrator's hands, and no claims had been presented against the estate; that the administrator had incurred much expense in endeavoring to find property, without success, and prayed to be discharged. The appellant appeared and filed certain exceptions to the account; all of which went to show that there was a balance due to the estate from a partner of the deceased, which sum the administrator had failed to reduce to his possession. These exceptions constituted the issues of fact; they were certified to the District Court. To the account of the administrator was attached a statement, made by the surviving partner, of the indebtedness due to deceased. This statement, it seems, was given to the administrator by the surviving partner, on the demand of the former. The contestation of the appellant seems to attempt to put in issue the correctness of this account, alleging that the amount of the indebtedness was greater than as set forth in the statement.

After the issues were brought into the District Court, a trial was had, and a finding by the jury upon each; whereupon the Judge rendered *his decision thereupon,* hereafter quoted, in which it was declared that the surviving partner was indebted to the deceased partner in the sum of $———. These proceedings were certified to the Probate Court, and a motion made in that

Court to render judgment upon the basis, and in pursuance, of this decision and these findings. But the Probate Court, giving effect, as it construed them, to the findings as ascertained facts, refused to give effect to the decision and judgment of the District Court. It discharged the administrator, and found no sum due from Aaron Pond to the estate of the deceased.

The error of the appellant, and of the District Court, which pervades this whole case, lies in mistaking the office of an issue from the Probate to the District Court. There is no relation of inferiority in the constitution or powers of the former Court, as respects the District Court. They are unlike; but, within their respective spheres, not unequal. They are both Constitutional Courts. No appeal lies from one to the other. Issues of fact are sent from the Probate to the District Court, not as from an inferior to a superior tribunal, but for the sake of convenience, because the Probate Court has not the machinery of jury trial and its incidents. But it was never intended to transfer any portion of the jurisdiction of Probate Courts to the District Courts. The jurisdiction is given by the Constitution to the Courts of Probate, as jurisdiction over common-law matters is given to the District Courts. The statute of 1855, directing these issues, was not designed to make the *judgments* of the District Courts binding upon the Courts of Probate. The Probate Court does not lose its jurisdiction over a subject of which it has taken cognizance by adopting the proceeding of an issue whereby to determine the issue advisedly; the finding of a jury is merely in aid of its jurisdiction, by settling the facts, and thus furnishing the material upon which it is to act. The District Judge, in trying an issue, necessarily decides the legal questions arising upon the trial, and regulating the admission or rejection of testimony. But after the finding his functions cease. It might be conceded—though this is very questionable—that he may grant a new trial, but he can do no more. He is not in the exercise of an original, but of a special jurisdiction, given him for a special and limited purpose. He is to certify back the findings, which then become a part of the record of the Probate Court. It is not necessary to decide whether these findings are conclusive of the facts they ascertain, or whether they are only advisory. It is enough for the present purpose to decide that they do not authorize a withdrawal of any portion of the jurisdiction of the Probate Court, by giving a power of rendering a final decision or judgment to the District Court upon the findings. If the Legislature had intended to divest the Probate Court of, and invest the District Court with, such partial jurisdiction, it would have been done in plain terms; but, certainly, in the absence of a very apparent intention, the absurdity can not be attributed to it of dividing a case into fragments, and ap-

portioning different parcels of it to different Courts, to be decided piecemeal at different times.

The District Court, by virtue of its common-law powers alone, derives its power to try issues of fact, and that Court, as a Court of Law, has no jurisdiction over probate matters. Its jurisdiction over matters of account and the like, is derived from its grant of equitable power in the Constitution, and in that respect it has only concurrent jurisdiction with the Probate Court. But, obviously, it would not be competent for the Legislature to delegate to the District Court, as a Court of Law, a supervisory power over the proceedings of the Probate Court, or to assume cognizance or control over any appropriate and peculiar subjects of probate jurisdiction; and it follows, of course, that the District Judge, sitting on the trial of an issue of fact, and thus exercising mere common-law jurisdiction, can not take to himself a right of final judgment over the subject of an account or its settlement, belonging to the Probate Court. Whatever the meaning of the statute of 1855 may be in that portion of it which declares that the District Court shall transmit the findings of the jury and *its decision* to the Probate Court, it can not mean that the District Court—at all events, in a case like this—can go beyond the verdict, and extend its operation by disposing of the subject-matter of the findings. Nor if by mere implication, from the use of this term "decision," we were convinced that this was the intention, would it be competent for the Legislature to give the power.

In this case the District Court passes beyond the findings, and seeks to give effect to them by a decree virtually settling the partnership account of Aaron Pond and Hiram, and finding the former indebted to the estate of the latter. Aaron Pond was no party to the proceeding. Of course, this action of the Court did not bind him, and because the jury found that the account of these partners was different from that supposed by the administrator and reported by Aaron, the costs of the proceedings were visited upon the administrator. The Court, after reviewing the findings of the jury, concludes as follows: "The report of the surviving partner shows that he has collected, since the death of Hiram, of the firm accounts, etc., the sum of $2334 82. Add to this the $1102 84, mentioned in the second finding above, and it shows the sum of $3437 66 of the joint effects of Hiram and A. H. Pond unaccounted for and unadministered, and the judgment of the Probate Court should be rendered to the effect that the final report and settlement of the administrator be rejected, and said administrator ordered to proceed and administer said assets, and that the costs of the trial and proceedings in the District Court, etc., be paid by said administrator out of his individual funds. Said costs will be taxed by the clerk of this Court and remitted, with these proceedings, to the Probate Court."

We think the Court erred in thus passing upon the matters found by the jury; it was for the Probate Court to determine the effect of the facts so found, and not for the District Court to dictate to it the appropriate action.

The Probate Court, therefore, did not err in proceeding to settle the account of the administrator upon its own judgment as to the effect of these findings, and we do not perceive that it has committed any error in the judgment it has rendered.

We have waived the discussion of the question presented by the argument, whether the mere failure to return an unliquidated claim like this by the administrator for its full amount (no fraud or intentional concealment or falsification of facts being shown—but the administrator acting in good faith,) creates any liability against him, or constitutes any proper matter for an issue under the statute. Nor whether the administrator, having no funds, is bound to undertake a long and expensive litigation to settle a partnership account, at his own expense, if he fails to recover, when he believes, and has reason to believe, that nothing is due to the estate of his intestate.

It seems to us that the argument of the respondent, founded upon the irremediable hardship of the case, if there is indebtedness from the surviving partner to the estate, is unfounded. The resignation or discharge of the administrator need not affect the interest of the heir. The heir, or any one else, may take out new administration, file a bill in equity in the District Court for a settlement of the partnership account, and recover whatever balance is due from the survivor to the estate of deceased. In this way, and in this way only, can the fact or amount of indebtedness by Aaron to Hiram's estate be ascertained; and these proceedings in the District and Probate Courts, Aaron being no party to them, constitute no bar, and can have no effect on such a proceeding.

The decree of the Probate Court is affirmed.